UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAUREN JACKSON,

      Plaintiff,                             Case No. 14-cv-11877
                                            Hon. Matthew F. Leitman

v.

ELTMAN, ELTMAN & COOPER, P.C.,

      Defendant.

_____/

**OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF #12), (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #13), AND (3) ORDERING SUPPLEMENTAL BRIEFING STATE-LAW CLAIMS**

In this action, Plaintiff Lauren Jackson ("Jackson") alleges that Defendant Eltman, Eltman & Cooper, P.C. ("Eltman") violated three sections of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq*. (the "FDCPA"). First, Jackson claims that Eltman violated Sections 1692b(5) and 1692c(b) of the FDCPA when it communicated with her employer in connection with the collection of a debt. Second, Jackson alleges that Eltman violated Section 1692g(a) when it failed to provide her with a required notice concerning the terms and nature of her debt within five days of Eltman's "initial communication" with her.

1

The parties have now filed cross-motions for summary judgment.   For the reasons explained below, the Court grants summary judgment in favor of Jackson on her claim under Sections 1692b(5) and 1692c(b) of the FDCPA and grants summary judgment in favor of Eltman on Jackson's claim under Section 1692g(a).

## RELEVANT FACTUAL BACKGROUND

In November 2007, Providian Bank ("Providian") obtained a civil judgment against Jackson. (*See* Jackson Deposition, ECF #13-2 at 19-20, Pg. ID 91.) Providian then hired Eltman to verify Jackson's employment and identify local counsel to assist in collecting the outstanding debt from the judgment.

On April 14, 2014, Eltman sent correspondence by fax to Jackson's employer – the retail establishment Lover's Lane.  The fax consisted of two pages: a cover page and a form on which Eltman asked Lover's Lane to verify Jackson's employment (the "Collection Fax").  (*See* ECF #17-2.)  The fax header on both pages of the Collection Fax included the word "COLLECTION" in all capital letters.  (*See id.* at 2-3, Pg. ID 218-219.)  Lover's Lane's human resources manager gave the fax to Jackson and informed her that Eltman was seeking to verify her employment.  (*See* Jackson Dep. at 26, Pg. ID 92.)

On April 21, 2014, Jackson called Eltman to find out why the company wanted to verify her employment.  (*See id.* at 27-28, Pg. ID 92; ECF #13-3 at 2, Pg. ID 96.)  Jackson was connected to Eltman representative Theresa Middleton.

2

(*See* Jackson Affidavit, ECF #21-2 at ¶¶ 7-8.)   Middleton asked for Jackson's "full name, [her] full address, and [her] full Social Security number.   [After Jackson] provided all of that information … [Middleton then] told [Jackson] that [Middleton] was not permitted to speak with [Jackson] and [a] supervisor would have to contact [Jackson] back."  (Jackson Dep. at 30, Pg. ID 93.)

According to Jackson, nobody from Eltman called her back or provided her with any information about the Collection Fax.   (*See id.* at 30-31, Pg. ID 93.) Jackson called Eltman a second time on April 30, 2014, but she again was unable to reach anyone who was willing to provide her any details about why Eltman was attempting to verify her employment.  (*See id.* at 31, Pg. ID 93.)

## GOVERNING LEGAL STANDARD

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted).  When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.*  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252.  Summary judgment is not appropriate

3

when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

**A.     Eltman Violated Sections 1692b(5) and 1692c(b) of the FDCPA When It Communicated With Jackson's Employer in Connection with the Collection of a Debt**

Jackson argues that Eltman violated Sections 1692b(5) and 1692c(b) of the FDCPA when it sent the Collection Fax to Lover's Lane. Subject to certain exceptions, Section 1692c(b) prohibits debt collectors from communicating with third parties in an effort to collect a debt without the prior consent of the debtor. Section 1692c(b) provides:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. §1692c(b). Section 1692b allows debt collectors to contact third parties "other than the consumer for the purpose of acquiring location information about the consumer," but it provides that when a debt collector does so, it may "not use

4

any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt." 15 U.S.C. § 1692b(5).

Eltman argues that these sections of the FDCPA do not apply to the Collection Fax because the fax was not a "communication" as defined by the FDCPA.  The Court disagrees.

The FDCPA defines a "communication" as the "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).  A fax transmission constitutes a "communication" if it "indicate[s] to the recipient that the message relates to the collection of a debt." *Marx v. General Revenue Corp.*, 668 F.3d 1174, 1177 (10th Cir. 2011).  That is precisely what the Collection Fax did.  It informed its recipient that a law firm was attempting to verify Jackson's employment in connection with a "COLLECTION." The contents of the Collection Fax would plainly have indicated to a recipient that it "relate[d] to the collection of a debt." [1]  *Id.*  Indeed, given the use of the all-caps

---

[1] Eltman highlights Jackson's testimony that neither she nor the Lover's Lane HR Manager who originally received the Collection Fax recognized that the fax related to a debt owed by Jackson. (*See* Eltman's Br., ECF #13 at 10, Pg. ID 83.)  But Eltman candidly acknowledges that "the standard" for assessing whether a transmission constitutes a "communication" is "an objective one." (*Id.*)  The Court concludes that a reasonable, objective observer would have understood that the Collection Fax conveyed that Jackson owed a debt.

5

word "COLLECTION" on law firm correspondence seeking an employment verification, the Collection Fax cannot reasonably be read as conveying anything other than that Jackson owed a debt and that Eltman was trying to collect it.[2]

The primary cases that Eltman cites to the contrary are easily distinguishable. For instance, in *Marx*, the United States Court of Appeals for the Tenth Circuit held that a fax transmission from a debt collector was not a "communication" where it identified the debtor, sought employment verification, and listed an identification number. *Id.* at 1177-78. But the Tenth Circuit stressed that the fax did not "expressly reference debt" and could not "reasonably be construed to imply a debt." The Tenth Circuit also noted that a party "may seek to verify employment status (without hinting at a debt) for any number of reasons, including as part of processing a mortgage, conducting a background check before hiring, or determining eligibility for an extension of credit." *Id.* Thus, the debt collector's inclusion of the words "employment verification" on the fax in *Marx* did not imply the existence of a debt and did not transform the fax into a communication under the FDCPA. Here, in contrast, Eltman included the word "COLLECTION" on both pages of the Collection Fax, and, as explained above,

---

[2] "The focus of § 1692b is protecting one basic piece of information about an outstanding debt – its existence." Zachary R. Cormier, *When a Communication is Not a "Communication": The Ever Growing Jurisdictional Split Regarding the Scope of Permissible Third Party Contacts Under the Fair Debt Collection Practices Act*, 14 J. Bus. & Sec. L. 97, 128 (2013).

the use of that word could "reasonably be construed to imply a debt."  Indeed, the inclusion of the word "COLLECTION" removed any uncertainty as to why Eltman was seeking to verify Jackson's employment; it was doing so because Jackson owed a debt.  The Collection Fax thus materially differs from the employment verification fax in *Marx* and, unlike the fax in *Marx*, amounted to a "communication."

Nor does the decision in *Zortman v. J.C. Chirstensen & Assoc., Inc.*, 870 F.Supp.2d 694 (D. Minn. 2012), support Eltman's argument that the Collection Fax was not a "communication."  The debt collector in *Zortman* left the following voice mail message: "We have an important message from J.C. Christensen & Associates.  This is a call from a debt collector.  Please call 866-319-8619."  *Id.* at 696.  The court in *Zortman* held that this message did not amount to a "communication" because a person listening to it would have to make "two key inferences" in order to conclude that the plaintiff owed a debt:

> Here, in order to fit within the "conveying of information regarding a debt" language of § 1692a(2), a third-party listener would need to make two key inferences. JCC's messages were not directed to Zortman by name. Thus, anyone who listened to the messages would not be told that Christine Zortman was being contacted in connection with a debt she owed. A person who heard the message would have to make the assumption that because it was Zortman's telephone that she was the intended recipient. But the number might have been dialed in error. The debt collector might have wrong or outdated information about the owner of the number it dialed. In a world where

7

> wrong numbers are a fact of life, the unintended third-party listener would understand that one possible explanation for the message he or she overheard might be a wrong number. Nothing in JCC's message removed that possibility. The unintended listener would then have to make a second assumption—that the only reason a debt collector calls is to collect a debt. Even if that is a common reason for calls, debt collectors also place calls to obtain location information. *See* 15 U.S.C. § 1692b. In this case, Zortman worked for a debt collector. It would not be unreasonable that a call from a debt collector related to her employment. Inferences or assumptions by an unintended listener are not "indirect communications." JCC's message is in contrast to the messages found to be violations in other cases that said the consumer's name and identified a debt.

*Id.* at 704-05. Unlike the person receiving the message in *Zortman*, a person receiving the Collection Fax here would not have to make either of these "key inferences" in order to conclude that Jackson owed a debt. The Collection Fax identifies Jackson by name and states its purpose as "COLLECTION." Thus, the Collection Fax is not the type of message that may not qualify as a "communication" under *Zortman*.

Because the Collection Fax clearly conveyed information regarding the existence of Jackson's debt, it constituted a "communication," and Eltman violated

8

Sections 1692b(5) and 1692c(b) of the FDCPA when it sent the fax to Lover's Lane without Jackson's consent.[3]

**B.    Eltman Did Not Violate Section 1692g(a) of the FDCPA by Failing to Send Jackson Notice About Her Debt Following Jackson's Call to Eltman on  April 21, 2014**

Section 1692g(a) of the FDCPA requires a debt collector to provide certain written notice to a debtor within five days of the collector's "initial communication with a consumer in connection with the collection of any debt." 15 U.S.C. § 1692g(a).  This Section provides in relevant part:

> Within five days after the initial communication with a consumer *in connection with the collection of any debt*, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --
>
> > (1) the amount of the debt;

---

[3] Eltman offers two additional arguments as to why it cannot be held liable under Sections 1692b(5) and 1692c(b), but neither warrants substantial analysis.  First, Eltman argues that it cannot be held liable for sending a communication about Jackson's debt because the debt was a matter of public record. (*See* Eltman Br., ECF #13 at 13, Pg. ID 86.)  But Eltman points to no language in the FDCPA that allows a debt collector to communicate with third parties about a debt if the debt is a matter of public record.  Second, Eltman argued at a hearing before the Court that Eltman was permitted to disclose the existence of Jackson's debt because doing so was "reasonably necessary to effectuate a postjudgment judicial remedy," 15 U.S.C. § 1692c(b) – here, a garnishment of Jackson's wages.  But Eltman plainly could have asked Lover's Lane to verify Jackson's employment without disclosing that Jackson owed a debt.  Simply put, it was not "reasonably necessary" for Eltman to disclose that Jackson owed a debt in order for Eltman to request the employment verification needed to effectuate a garnishment of Jackson's wages.

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)-(5) (emphasis added).

Jackson alleges that Eltman violated Section 1692g(a) when it failed to send her the required written notice following her telephone conversation with Middleton, a representative of Eltman, on April 21, 2014. But that conversation did not constitute an "initial communication with a consumer *in connection with the collection of any debt*," and thus it did not trigger Eltman's obligation to send written notice to Jackson under Section 1692g(a).

10

"[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Grden v. Leikin Ingber & Winter, P.C.*, 643 F.3d 169, 172-73 (6th Cir. 2011). Here, Middleton did not say or do anything that had the purpose of inducing Jackson to make any payments toward her outstanding debt. On the contrary, as Jackson admits, Middleton said "that she was *not* permitted to speak with [Jackson] and her supervisor would have to contact [Jackson] back." (Jackson Dep. at 30, Pg. ID 261; emphasis added.) Middleton's *refusal* to speak with Jackson about the debt is plainly not an effort to cause Jackson to make a payment.

Jackson testified that Middleton also "asked for [Jackson's] full name, [her] full address, and [her] full social security number" (*id*), but those requests did not transform the conversation into a purposeful effort to collect a debt. There is no evidence that Middleton asked for this information to enhance Eltman's ability to collect Jackson's debt or as part of Eltman's debt-collection strategy. And in the context of the entire conversation – in which Middleton *refused* to discuss the debt

11

– Middleton's requests are more properly seen as Middleton confirming Jackson's identity.[4]

Because Middleton's brief conversation with Jackson was not "in connection with the collection of any debt," that conversation did not trigger Eltman's obligation to send written notice regarding the debt to Jackson. Eltman is therefore entitled to summary judgment on Jackson's claim under Section 1692g(a) of the FDCPA.

---

[4] Jackson has submitted an affidavit in which she now claims that Middleton also asked for the name of her employer during this April 21, 2014 phone call. (*See* Jackson Affidavit at ¶8.)  At a hearing before the Court, Jackson argued that Middleton's request for her employer's identity creates a question of fact as to whether Middleton was gathering information to collect a debt through the garnishment process.  The Court disagrees for two reasons.  First, the Court declines to consider this statement from the affidavit because it is "a sham." *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (explaining that even if affidavit does not directly contradict prior deposition testimony, it may be stricken if it is a "sham").  Jackson's statement that Middleton asked for her employer's identity is a sham because (1) Jackson was questioned about her communications with Middleton during her deposition, undertook to specifically identify the information that Middleton requested, and did not list the employer's identity; (2) there is no indication that Jackson was confused during her deposition testimony nor any indication in the affidavit that it is correcting confusion experienced during the deposition; and (3) the statement in the affidavit is not based on newly-discovered evidence to which Jackson did not have access at the time of her deposition.  *See id*. (identifying factors to apply in "sham" analysis).  Second, even if Middleton did ask Jackson to identify her employer, that request would not convert the call – during which Middleton refused to engage with Jackson – into an effort "to induce payment by the debtor." *Grden*, 643 F.3d at 172-73.

## **CONCLUSION**

For the reasons stated above, **IT IS HEREBY ORDERED** that Jackson's Motion for Summary Judgment (ECF #12) and Eltman's Motion for Summary Judgment (ECF #13) are **GRANTED IN PART AND DENIED IN PART** as follows:

- Summary judgment is **GRANTED** to Jackson on her claims brought pursuant to 15 U.S.C. §§ 1692b(5) and 1692c(b);

- Summary judgment is **GRANTED** to Eltman on Jackson's claim brought pursuant to 15 U.S.C. § 1692g(a); and

- Both parties' motions are **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that within fourteen days of the date of this Opinion and Order, the parties shall submit supplemental briefs, not to exceed seven pages, addressing how this Opinion and Order affects the state-law claims that remain pending in this action.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 1, 2015

13

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 1, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113